IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| KIMBERLY E. BRACEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION FILE |
| v. | ) | |
| | ) | NUMBER 1:10-cv-4064-TCB |
| ELIZABETH A. JOLLEY and | ) | |
| ANDREW SILBERMAN, | ) | |
| | ) | |
| Defendants. | ) | |

## O R D E R

This case comes before the Court on Defendants' motion for summary judgment [70].

## I.    Background

On October 18, 2008, Plaintiff Kimberly Bracey reported to a security guard at the Lenox Square Mall that her 1997 Acura Integra, which had been parked in the mall's public parking lot, was missing. The security guard suggested that Bracey wait for the parking lot to clear, but the car was still nowhere to be found. The security guard then called the Atlanta

Police Department ("APD"), which responded by dispatching Defendant Officer Elizabeth Jolley.

Jolley met Bracey at the mall's security office.  At that time, Bracey provided Jolley with the car's tag number, offered the keys to Jolley, explained that the car's certificate of title was likely in the glove compartment, and told Jolley that she did not have theft insurance on the vehicle.  Jolley contacted the Georgia Crime Information Center ("GCIC") to report the car stolen and explained to Bracey that an incident report would be available in seven to ten business days.

Bracey called the APD a number of times in the following weeks to find out the status of the investigation, but was told there was no record of the incident "in the system."

On November 20, the Doraville Police Department recovered the vehicle, and Bracey was able to pick it up the next day.  The original certificate of title was no longer in the glove compartment, however, so Bracey needed to obtain a replacement.  On December 16, she went to Georgia's Department of Revenue, Motor Vehicle Division ("MVD") to apply for a replacement certificate of title.  At that time, she learned that the MVD had issued a certificate of title to Jamie A. Alvarado-Valle on

November 24.  She was also told that she would need copies of the APD incident report and the Doraville police report in order to obtain a replacement certificate of title.

On December 17, Bracey visited the APD's central records unit to obtain a copy of the incident report, but she was told that there was still no incident report on file.  Later that day, she called the APD and spoke with a detective Burton, who apologized and admitted that Jolley had "dropped the ball."  Detective Burton promised to have Jolley file a report and call Bracey right away.  Over the next day, detective Burton called Bracey a few times to keep her apprised of the efforts to contact Jolley.

On December 19, Bracey called the APD again.  This time Jolley accepted the call and told Bracey that she would complete an incident report and deliver it to Bracey later that evening.  However, Jolley never delivered the incident report.  Instead, Jolley worked with Defendant detective Andrew Silberman to prepare an application for Bracey's arrest on the grounds that she had falsely reported a crime in violation of O.C.G.A. § 16-10-26.

Just after midnight, Silberman swore out an affidavit in support of the warrant application.  The affidavit stated that the vehicle had been sold

to Alvarado-Valle on October 15, 2008, four days before Bracey reported it stolen. The affidavit further stated that "the keys were with the vehicle" when it was recovered by the Doraville Police Department.

The statement in the warrant affidavit that the vehicle was sold to Alvarado-Valle was based upon MVD records Silberman was able to access through a system called CyberLYNXX. Before applying for the warrant, Silberman confirmed that the vehicle was listed as stolen in the GCIC when it was initially reported stolen, and he concluded that a new certificate of title could not have issued after that date.

Silberman and Jolley obtained the arrest warrant, and shortly after 1:00 a.m. on December 20, they and a few other police officers went to Bracey's apartment to arrest her. Bracey was taken to an APD station for questioning, where she asserted that she did not know Alvarado-Valle and that she had no reason to make a false report because she did not have theft insurance on the car. Jolley told Bracey that she did not believe her and took Bracey to the Fulton County Jail, where Bracey spent the next day or so. However, the criminal charges against her were summarily dismissed.

On December 14, 2010, Bracey filed this action against Jolley and Silberman. In her amended complaint, she asserts the following claims

against both Defendants: (1) false arrest under the Fourth Amendment; (2) retaliatory arrest under the First Amendment; (3) malicious prosecution under the Fourth Amendment; (4) false arrest under O.C.G.A. § 51-7-1; and (5) malicious prosecution under O.C.G.A. § 51-7-40.[1]  For relief, she seeks compensatory, punitive and nominal damages, as well as her reasonable costs and attorneys' fees.

On August 16, 2012, Defendants filed their motion for summary judgment, which is now before the Court.

## II.    Discussion

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  There is a "genuine" dispute as to a material fact if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *FindWhat Investor Grp. v. FindWhat.com*, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  In making this determination, however, "a court may not weigh conflicting evidence or make credibility determinations of

---

[1] Bracey's federal constitutional claims are brought under 42 U.S.C. § 1983, and she also asks the Court to consider corollary provisions of the Georgia Constitution.

its own." *Id.* Instead, the court must "view all of the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Id.*

"The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact." *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If the nonmoving party would have the burden of proof at trial, there are two ways for the moving party to satisfy this initial burden. *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437-38 (11th Cir. 1991). The first is to produce "affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial." *Id.* at 1438 (citing *Celotex*, 477 U.S. at 324). The second is to show that "there is an absence of evidence to support the nonmoving party's case." *Id.* (quoting *Celotex*, 477 U.S. at 323).

If the moving party satisfies its burden by either method, the burden shifts to the nonmoving party to show that a genuine issue remains for trial. *Id.* At this point, the nonmoving party must "'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine

issue for trial." *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593-94 (11th Cir. 1995) (quoting *Celotex*, 477 U.S. at 324).

### A.    Federal Claims and Qualified Immunity

Defendants argue that they are entitled to summary judgment on Bracey's federal claims based on qualified immunity.  Bracey brings the following three federal claims under 42 U.S.C. § 1983:  (1) false arrest under the Fourth Amendment, (2) retaliatory arrest under the First Amendment, and (3) malicious prosecution under the Fourth Amendment.[2]  She seeks money damages on each of these claims.

"Qualified immunity offers complete protection for individual public officials performing discretionary functions 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Sherrod v. Johnson*, 667 F.3d 1359, 1363 (11th Cir. 2012) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "To claim qualified immunity, a defendant must first show he was performing a discretionary function."  *Barnes v. Zaccari*, 669 F.3d 1295, 1302-03 (11th Cir. 2012).  "Once discretionary authority is

---

[2] The rights guaranteed by the First and Fourth Amendments are protected against state action through the Due Process Clause of the Fourteenth Amendment. *Duncan v. Louisiana*, 391 U.S. 145, 147-48 (1968).

established, the burden then shifts to the plaintiff to show that qualified immunity should not apply." *Edwards v. Shanley*, 666 F.3d 1289, 1294 (11th Cir. 2012) (quoting *Lewis v. City of W. Palm Beach, Fla.*, 561 F.3d 1288, 1291 (11th Cir. 2009)).

In this case, it is undisputed that Silberman and Jolley were acting within the scope of their discretionary authority. Therefore, the burden shifts to Bracey to show that "(1) the defendant[s] violated a constitutional right; and (2) the right was clearly established at the time of the violation." *Barnes*, 669 F.3d at 1303. The Court has discretion as to which element to address first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). In this case, the Court will determine whether each right was clearly established before determining whether Bracey has raised a genuine dispute of fact as to whether that right was violated.

In conducting this analysis, it is important to remember that "qualified immunity operates 'to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful.'" *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Saucier v. Katz*, 533 U.S. 194, 206 (2001)). The focus of the inquiry is the officer's "objective legal reasonableness," and the "clearly established law" test should not be applied at such a high level

of generality that it bears no relation to that focus. *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1982)). Instead, "the right . . . must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 640. Moreover, an official who reasonably but mistakenly believes that his conduct is lawful is still entitled to immunity. *Id.* at 641.

### 1.   False Arrest

In Count I of the amended complaint, Bracey brings a false arrest claim under the Fourth and Fourteenth Amendments and 42 U.S.C. § 1983. In evaluating Defendants' motion for summary judgment on that claim, the Court will first consider whether the right Bracey asserts under the Fourth Amendment was clearly established at the time of her arrest.

At the time of Bracey's arrest in December 2008, it was clearly established that an arrest without probable cause is an unreasonable seizure that violates the Fourth Amendment. *Davis v. Williams*, 451 F.3d 759, 764 n.8 (11th Cir. 2007). But for purposes of qualified immunity, it is insufficient to define Bracey's Fourth Amendment right at such a high level

of generality.  *See Anderson*, 483 U.S. at 640-41.  To achieve the requisite specificity, the Court must also determine whether it was clearly established that the circumstances of Bracey's arrest did not constitute probable cause. *See id.*  Again, the focus of the inquiry is the objective legal reasonableness of the officers; thus, Defendants are "entitled to immunity if a reasonable officer could have believed that probable cause existed to arrest [Bracey]." *Hunter v. Bryant*, 502 U.S. 224, 228 (1991).  In other words, Defendants are entitled to immunity if they had *arguable* probable cause, even if they did not have *actual* probable cause.  *Davis*, 451 F.3d at 762.

Where an arrest is made pursuant to a warrant, the inquiry is modified slightly, but the same principles apply.  The question becomes "whether a reasonably well-trained officer . . . would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant."  *Malley v. Briggs*, 475 U.S. 335, 345 (1986).  "Only where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable will the shield of immunity be lost."  *Id.* at 344–45 (internal citation omitted).  In other words, Defendants will be entitled to immunity as long as the warrant was

supported by *arguable* probable cause.  *See Lowe v. Aldridge*, 958 F.2d 1565, 1571–72 (11th Cir. 1992).

An additional complication arises, however, where the plaintiff alleges that the affidavit supporting the warrant application contained false statements or material omissions.  Such misstatements or omissions violate the Fourth Amendment if (1) they are the product of deliberate falsity or reckless disregard for the truth, and (2) they were necessary to the finding of probable cause.  *See Madiwale v. Savaiko*, 117 F.3d 1321, 1326-27 (11th Cir. 1997) (applying the principles established in *Franks v. Delaware*, 438 U.S. 154, 156 (1978)).[3]  But again, the existence of probable cause must be assessed in light of the objective legal reasonableness of the officer.  Thus, to receive immunity, the officer need only show that, after correcting for any misstatements or material omissions, the warrant affidavit would have established *arguable* probable cause.  *See id.* at 1327.

"In order to overcome summary judgment because of qualified immunity, 'the facts in dispute must raise a genuine issue of fact material to the determination of the underlying issue.'"  *Terrell v. Smith*, 668 F.3d

---

[3] Although the *Franks* rule was formulated in the context of a search warrant, it also applies to arrest warrants.  *See United States v. Martin*, 615 F.2d 318, 327-29 (5th Cir. 1980).

1244, 1250 (11th Cir. 2012) (quoting *McCullough v. Antolini*, 559 F.3d 1201, 1205 (11th Cir. 2009)).  Thus, to survive summary judgment, Bracey must raise a genuine dispute of fact as to whether (1) the warrant affidavit failed to establish arguable probable cause on its face, or (2) the warrant affidavit included false statements or omissions that were intentional or reckless and were necessary to establish arguable probable cause.

Before turning to facts of this case, the Court notes that the sufficiency of the affidavit will determine the immunity issue as to both Defendants.  Silberman, as the swearing officer, is obviously responsible for his own affidavit.  Moreover, the Court must assume that he knew all that would have been known by an officer who had conducted a reasonably competent investigation.  *See Kingsland v. City of Miami*, 382 F.3d 1220, 1232 (11th Cir. 2004).  Therefore, he is not excused based on a lack of knowledge if he failed to include relevant facts that could have easily been obtained from Jolley or another source.  *See id.* at 1229.

Jolley's role was somewhat different, but the sufficiency of the affidavit will also determine whether she is entitled to immunity.  First, she assisted Silberman in the creation of the affidavit; thus, she had a duty to intervene to prevent a constitutional violation.  *Byrd v. Clark*, 783 F.2d

12

1002, 1007 (11th Cir. 1986) ("If a police officer, whether supervisory or not, fails or refuses to intervene when a constitutional violation . . . takes place in his presence, the officer is directly liable under Section 1983.").  Second, she cannot rely on the warrant if Silberman's affidavit was "so lacking in indicia of probable cause as to render official belief in its existence unreasonable."  *United States v. Leon*, 468 U.S. 897, 923 (1984); *see also Malley*, 475 U.S. at 344 ("[T]he same standard of objective reasonableness that we applied in the context of a suppression hearing in *Leon* . . . defines the qualified immunity accorded an officer whose request for a warrant allegedly caused an unconstitutional arrest.").

Bracey does not contend that the warrant affidavit failed to establish arguable probably cause on its face.  Instead, she argues that it included false statements or omissions that were intentional or reckless and were necessary to establish arguable probable cause.  First, she argues that the affidavit falsely stated that the vehicle was purchased by Alvarado-Valle on October 15, 2008, four days before Bracey reported the car stolen.  But even assuming that statement was false, Bracey has failed to raise a genuine dispute of fact as to whether the falsity was intentional or reckless.

13

Silberman based this statement upon MVD records showing that the car was purchased by Alvarado-Valle on October 15, 2008.  Bracey argues that Silberman recklessly relied upon the MVD records and failed to realize that Alvarado-Valle could have concocted a false purchase date in order to obtain a new certificate of title after stealing the car.  However, before he applied for the warrant, Silberman confirmed that the vehicle was listed as stolen in the GCIC after it was reported stolen on October 18, 2008, and he reasonably believed that the MVD would not issue a new certificate of title after the vehicle was listed as stolen in the GCIC.  Therefore, he reasonably relied upon the MVD records showing that the vehicle was sold before it was reported stolen, and the statement to that effect in his affidavit was not reckless.[4]

Next, Bracey argues that Silberman should have stated in his warrant affidavit that "there have been instances where Georgia Registration and Title Information System (GRATIS) [used by the MVD] did not capture that a VIN was reported or listed as stolen under NCIC."  However, even the

---

[4] Bracey argues that the she has proved the material allegations in her complaint and that the Court's analysis should therefore be the same as when it decided Defendants' motion to dismiss.  However, at the motion-to-dismiss stage, the Court found that Bracey had plausibly alleged that the vehicle was not listed as stolen after Jolley took the original report on October 18, 2008.

expert upon whose testimony Bracey relies could not state how commonly such errors occur.  Kessler Dep. 15:17-18, July 26, 2011.  There is no reason to believe that the error-rate is significant; therefore, Silberman was not reckless in failing to include such a statement in his affidavit.

Bracey further argues that Silberman should have stated in his warrant affidavit that (1) Bracey's title was in the glove box of her car on October 18, 2008; (2) Bracey's name was misspelled on the back of the title when Alvarado-Valle submitted it to the MVD; (3) an MVD clerk will simply enter whatever purchase date the buyer writes on the title application; and (4) Silberman has no idea how one applies for a new title at the MVD.  But all of these facts speak to the possibility of Alvarado-Valle obtaining a new certificate of title after Bracey reported the car stolen, and again, Silberman reasonably believed that a new certificate of title could not have issued after the vehicle was listed as stolen in the GCIC.  Therefore, he reasonably believed that the new title issued before Bracey reported her car stolen, and he was not reckless in failing to include any of these facts in his affidavit.

Next, Bracey argues that Silberman should have stated in his affidavit that when he ran an inquiry of MVD records using Bracey's tag number, the results showed Bracey as the registered owner of the vehicle, but when he

ran the inquiry using the Integra's vehicle identification number ("VIN"), the results showed Alvarad0-Valle as the owner, with a purchase date of October 15, 2008.  However, Bracey fails to articulate how this distinction is material.  Regardless of the fact that the tag number was still registered to Bracey, the fact remains that Silberman reasonably believed that a new certificate of title could not have issued after the vehicle was listed as stolen on the GCIC under its VIN.  Therefore, Silberman was not reckless in failing to include this information in his affidavit.

Next, Bracey argues that Silberman should have stated in his affidavit that neither he nor Jolley had ever performed an auto theft investigation.  However, the affidavit did not purport to reach any conclusions based upon either officer's experience in auto theft investigations, and Bracey fails to articulate how their lack of experience somehow defeats arguable probable cause.  Therefore, Silberman was not reckless for failing to include that information in his affidavit.

Next, Bracey argues that Silberman should have stated in his warrant affidavit that Bracey did not have theft insurance on her car.  However, the theory of the case was that Bracey sold the car for cash and then reported it stolen so that she could get the car back and keep the cash.  Therefore, the

fact that she had no theft insurance was not material, and Silberman was not reckless in failing to include that information in his affidavit.

Finally, Bracey argues that Silberman should have stated in his warrant affidavit that she offered Jolley the original keys to her car on October 18, 2008 and that "the keys" found with the car when it was recovered by the Doraville Police Department were not Bracey's keys. However, Bracey could have sold the vehicle before she reported it stolen and given the buyer a duplicate key. Therefore, even if Silberman would have included this information in his affidavit, the facts would have been consistent with his theory of the case, and the warrant would have been supported by arguable probable cause.

Bracey also argues that Defendants should have taken a number of steps to further their investigation, including interviewing other witnesses and obtaining copies of the underlying title documents from the MVD. However, she fails to articulate how such further investigation would have led to the discovery of information that would have defeated arguable probable cause. Moreover, "a police officer 'is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest.'" *Kingsland*, 382 F.3d at 1229 (quoting *Ricciuti v. N.Y.C. Transit*

17

*Auth.*, 124 F.3d 123, 128 (2d Cir. 1997)).  Defendants did not "turn[ ] a blind eye to immediately available exculpatory information."  *Id.* at 1229 n.10. Therefore, any additional steps they might have taken are irrelevant to the probable-cause analysis.

In sum, the warrant affidavit was supported by arguable probable cause to believe that Bracey falsely reported her car stolen.  Specifically, the affidavit stated that the vehicle was sold prior to the date it was reported stolen, and Defendants reasonably relied upon MVD records in reaching that conclusion.  Bracey has failed to raise a genuine dispute as to whether the statement was intentionally or recklessly false, whether Defendants intentionally or recklessly omitted known facts that would have defeated arguable probable cause, or whether Defendants turned a blind eye to immediately exculpatory information.  Therefore, Defendants are entitled to summary judgment on Bracey's false-arrest claim.

2.    Retaliatory Arrest

In Count II of the amended complaint, Bracey alleges that "Officer Jolley, with the help of Detective Silberman, retaliated against Bracey for engaging in constitutionally protected speech by unlawfully securing an arrest warrant . . . without arguable probable cause and then arresting and

18

incarcerating her."[5]  Thus, she brings a claim for retaliatory arrest under the First and Fourteenth Amendments and 42 U.S.C. § 1983.

Like a false-arrest claim under the Fourth Amendment, a retaliatory-arrest claim under the First Amendment is defeated by the existence of probable cause.  *Dahl v. Holley*, 312 F.3d 1228, 1236 (11th Cir. 2002). Similarly, to receive qualified immunity on a First Amendment retaliation claim, an officer need only have *arguable* probable cause.  *See Redd v. City of Enterprise*, 140 F.3d 1378, 1383 (11th Cir. 1998) ("Because we hold that the officers had arguable probable cause to [make the arrest], we must hold that the officers are also entitled to qualified immunity from the plaintiffs' First Amendment claims.").

Because Bracey has failed to raise a genuine dispute of fact as to whether the arrest warrant was supported by arguable probable cause, Defendants' are also entitled to summary judgment on Bracey's retaliatory arrest claim.

---

[5] Bracey contends that her inquiries to the APD regarding the status of the investigation were constitutionally protected speech.

### 3.   Malicious Prosecution

In Count III of the amended complaint, Bracey brings a claim for malicious prosecution under the Fourth and Fourteenth Amendments and 42 U.S.C. § 1983.  Although the Supreme Court has not decided whether a state official may be sued for malicious prosecution under § 1983, *Wallace*, 549 U.S. at 390 n.2, the Eleventh Circuit "has identified malicious prosecution as a violation of the Fourth Amendment and a viable constitutional tort cognizable under § 1983," *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1256 (11th Cir. 2010) (quoting *Wood v. Kesler*, 323 F.3d 872, 881 (11th Cir. 2003)).

In order to prevail on a claim for malicious prosecution under § 1983, the plaintiff must establish "a violation of his Fourth Amendment right to be free from unreasonable *seizures* in addition to the elements of the common law tort of malicious prosecution."  *Wood*, 323 F.3d at 881. "Consequently, the existence of probable cause defeats a § 1983 malicious prosecution claim."  *Id.*  And just as with false-arrest claims, "[t]o receive qualified immunity, an officer need not have actual probable cause, but only 'arguable' probable cause."  *Id.* at 1257.

20

Because Bracey has failed to raise a genuine dispute of fact as to whether the arrest warrant was supported by arguable probable cause, Defendants are also entitled to summary judgment on Bracey's malicious prosecution claim.

### B.   State-Law Claims and Official Immunity

Under Georgia law, state and local officials may be liable for their discretionary acts only "if they act with actual malice or with actual intent to cause injury." *See* GA. CONST. art. I, § II, ¶ IX(d); *Gilbert v. Richardson*, 452 S.E.2d 476, 483 (Ga. 1994).  Because it is undisputed that Silberman and Jolley acted within the scope of their discretionary authority, Bracey must raise a disputed issue of fact on the issue of actual malice or actual intent to cause injury to survive summary judgment.  *See Howell v. Willis*, 729 S.E.2d 643, 645-47 (Ga. Ct. App. 2012) (defendant was entitled to summary judgment based upon official immunity where the acts were discretionary and there was no evidence of actual malice).

Bracey argues that malice may be inferred if Defendants' acts "were wanton or were done with a reckless disregard for or conscious indifference to" her rights.  *Willis v. Brassell*, 469 S.E.2d 733, 738 (Ga. Ct. App. 1996).  She also argues that malice may be "inferred from a total lack of probable

cause." *Medoc Corp. v. Keel*, 305 S.E.2d 134, 136 (Ga. Ct. App. 1983).  But the cases upon which she relies dealt with the malice element of a malicious prosecution claim, not official immunity, and the Georgia Supreme Court has rejected implied malice as a means to defeat official immunity.  *See Merrow v. Hawkins*, 266 Ga. 390, 392 (1996) (1991 Georgia constitutional amendment excludes "any liability for injuries and damages if officers and employees act with implied malice in the performance of their official functions").

Instead, "in the context of official immunity, actual malice means a deliberate intention to do a wrongful act." *Adams v. Hazelwood*, 520 S.E.2d 896, 898 (Ga. 1999).  Bracey has failed to identify any evidence that either Silberman or Jolley acted with such intent.  Consequently, she has failed to raise a genuine dispute of material fact on the issue of official immunity, and Silberman and Jolley are entitled to summary judgment on her state-law claims.

## III.   Conclusion

Defendants' motion for summary judgment [70] is GRANTED.  The Clerk is DIRECTED to enter final judgment in favor of Defendants on all of Plaintiff's claims and to close the case.

IT IS SO ORDERED this 27th day of March, 2013.

_____
Timothy C. Batten, Sr.
United States District Judge